Charles A. DORCHY, Plaintiff,

v.

WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, Defendant.

Civil Action No. 96–2753 AK.

United States District Court, District of Columbia.

Feb. 25, 1999.

Thomas Fortune Fay, Washington, DC, for Plaintiff.

Robert John Kniaz, Jay Richard Goldman, Nancy Fay Langworthy, Washington Metropolitan Area Transit Authority, Office of General Counsel, Washington, DC, for Defendant.

## MEMORANDUM OPINION AND ORDER

KAY, United States Magistrate Judge.

Plaintiff Charles A. Dorchy sued Defendant Washington Metropolitan Area Transit Authority (WMATA), claiming violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and of section 794 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 701 *et seq.* The case is before this Court for all purposes, including trial, pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 502. Pending before the Court is Defendant's Motion to Dismiss the Complaint and/or for Summary Judgment [32].[1] This Court issued an Order on November 10, 1998 denying the instant motion and indicating that an opinion would follow. This opinion and subsequent Order vacate the Order of November 10, 1998 and modify the holdings therein.

## I. BACKGROUND

Mr. Dorchy, who is African–American, has worked for WMATA since 1981. On November 1, 1994, while working as a Class "B Machinist" in the machine shop of the Heavy Overhaul Shop in the Department of Bus Services, Mr. Dorchy suffered a work-related back injury for which he was treated surgically on November 7, 1994. Mr. Dorchy's treating physician, Dr. Cooney, approved his return to work in October 1995 with restrictions and found that he had a "twenty-five percent permanent partial disability of the body as a whole." Mr. Dorchy attempted to return to work in October 1995, but insisted on limiting his job functions to exclude heavy lifting. WMATA refused to allow him to return on those conditions, requiring Mr. Dorchy to be physically able to perform all the tasks of a Class B machinist. Mr. Dorchy did not return to work until August 7, 1996. He worked until January 27,

---

1. Defendant WMATA in its motion for summary judgment addressed claims made under both Title VII and the Americans With Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.* Mr. Dorchy, however, does not have an ADA claim before the Court. While Mr. Dorchy's initial Complaint, filed *pro se*, made a claim under the ADA, his Amended Complaint, filed by his attorney, made claims only under Title VII and the Rehabilitation Act. *See* Amended Complaint at 3. "[A]n amended complaint ordinarily supersedes the original, and renders it of no legal effect...." *Austin v. Ford Models, Inc.*, 149 F.3d 148, 155 (2d Cir.1998) (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir.1994)); *see Duda v. Board of Educ. of Franklin Park Public School District No. 84*, 133 F.3d 1054, 1057 (7th Cir.1998) ("The amended complaint became, upon its submission, the operative complaint in the case; the original filing no longer controlled the litigation.").

Mr. Dorchy's Amended Complaint controls this case, and renders any ADA claim contained in his initial Complaint moot. However, section 794 of the Rehabilitation Act, under which Mr. Dorchy makes his claim, directs that "[t]he standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act of 1990 ... and the provisions of sections 501 through 504, and 510, of the Americans with Disabilities Act of 1990 ... as such sections relate to employment." 29 U.S.C. § 794(d); *see Martinus v. Runyon*, No. 96 C 5527, 1998 WL 265089, at *3 (N.D.Ill. May 13, 1998) ("When analyzing an employment discrimination claim brought under the Rehabilitation Act, the Court uses the standards developed under the Americans with Disabilities Act...."). As such, the Court will address WMATA's arguments for summary judgment as they relate to Mr. Dorchy's claim under the Rehabilitation Act because the two Acts utilize the same standards to determine whether an employer has committed a violation.

1997, when he was again forced to stop working due to his back injury.

Following Mr. Dorchy's unsuccessful attempt to return to work in October 1995, he filed a charge with the Equal Employment Opportunity Commission (EEOC) on November 27, 1995, alleging discrimination based on race and on a disability that occurred on November 6, 1995. The EEOC issued Mr. Dorchy a right-to-sue letter on August 23, 1996, and he filed this action on November 19, 1996.

## II. LEGAL STANDARD

WMATA's motion entitled "Motion to Dismiss the Complaint and/or for Summary Judgment of Defendant Washington Metropolitan Area Transit Authority (WMATA)" requests relief under Fed. R.Civ.P. 12(b)(6) and 56. Fed.R.Civ.P. 12(b), addressing, *inter alia,* failure by a plaintiff to state a claim upon which relief can be granted, directs a court to treat a motion to dismiss as a motion for summary judgment if "matters outside the pleading are presented to and not excluded by the court...." Fed.R.Civ.P. 12(b). *See IMS v. Alvarez,* 129 F.3d 618, 619 n. 1 (D.C.Cir. 1997). Because the parties submitted and this Court relies in this opinion on matters outside the pleadings of this motion, the Court treats WMATA's motion as a motion for summary judgment.

Fed.R.Civ.P. 56 states that summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (stating that a court may enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which the party will bear the burden of

proof at trial"). In considering a summary judgment motion, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). *See Bayer v. United States Dep't of Treasury,* 956 F.2d 330, 333 (D.C.Cir. 1992). There is a genuine issue of material fact "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. "Material" facts are facts in dispute that "might affect the outcome of the suit under the governing law." *Id.*

## III. DISCUSSION

Plaintiff brings two counts of discrimination in his Amended Complaint, one under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* and one under the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* *See* Amended Complaint at 3. Defendant WMATA's motion addresses the three distinct types of discrimination alleged by Plaintiff: 1) WMATA's failure to make a reasonable accommodation for Plaintiff's disability,[2] in violation of the Rehabilitation Act;[3] 2) WMATA's failure to accommodate his injury in October 1995 was based on his race and in violation of Title VII; and 3) WMATA's failure to promote and afford training/preparation for promotions, based on race, in violation of Title VII. *See* Reply of Defendant WMATA to Plaintiff's Opposition to WMATA's Motion to Dismiss and/or for Summary Judgment at 3, 5, 7 [hereinafter "WMATA Reply"].

### A. The Rehabilitation Act

Mr. Dorchy's claim that WMATA failed to accommodate his disability is based on WMATA's alleged violation of 29 U.S.C.

---

2. Plaintiff alleges that the residual back problems resulting from the back injury sustained on November 1, 1994 while working for WMATA constitute a disability within the definition of the Rehabilitation Act.

3. *See supra* note 1.

§ 794, which states that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be . . . subjected to discrimination under any program or activity receiving Federal financial assistance. . . ." 29 U.S.C. § 794(a); *see also Burkhart v. Washington Metropolitan Area Transit Authority*, 112 F.3d 1207 (D.C.Cir.1997) (plaintiff sued WMATA under the Rehabilitation Act). Congress legislated that:

> [t]he standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act of 1990 (42 U.S.C. 1211 et seq.) and the provisions of sections 501 through 504, and 510, of the Americans with Disabilities Act of 1990 . . . as such sections relate to employment.

29 U.S.C. § 794(d). The Rehabilitation Act defines an "individual with a disability" as "any person who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment." 29 U.S.C. § 706(8)(B); *see also* 29 U.S.C. § 794(a). This language mirrors the definition of "disability" in the ADA. *See* 42 U.S.C. § 12102(s) (1995). Thus, this Court's analysis of whether Mr. Dorchy can survive a motion for summary judgment of his Rehabilitation Act claim will apply the legal standards and case analysis under the ADA. *See Perkins v. St. Louis County Water Co.*, 160 F.3d 446 (8th Cir.1998) ("We refer in this opinion only to Mr. Perkins's ADA claim, but the legal principles applicable to it are equally applicable to his Rehabilitation Act claim."); *McPherson v. Michigan High Sch. Athletic Assoc., Inc.*, 119 F.3d 453 (6th Cir.1997) (" '[B]y statute, the Americans with Disabilities Act standards apply in Rehabilitation Act cases alleging employment discrimination.' "); *Pritchard v. Southern Co. Serv.*, 92 F.3d 1130 (11th Cir.1996) ("[I]f [Plaintiff] may be found to be disabled under the ADA, then she may be found to be disabled under the Rehabilitation Act.").

The ADA mandates that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to . . . advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The ADA defines "discriminate" as

> not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity. . . .

42 U.S.C. § 12112(b)(5)(A); *see Aka v. Washington Hospital Ctr.*, 156 F.3d 1284, 1300 (D.C.Cir.1998); *see also Barnett v. U.S. Air Inc.*, 157 F.3d 744, 748 (9th Cir. 1998) ("Under the ADA, when an individual has a disability, his or her employer must accommodate the limitations resulting from that disability to the extent an accommodation is 'reasonable' and does not unduly burden the employer.").

█ In order to survive a motion for summary judgment based on ADA analysis, Mr. Dorchy must present direct evidence of discrimination against him based on his disability or he must provide indirect evidence of discrimination by meeting the three-step analysis established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), as explained by this Circuit's opinion in *Aka v. Washington Hospital Ctr.*, 156 F.3d 1284, 1288–94 (D.C.Cir.1998).

█ Generally, it is difficult to establish discrimination by direct evidence. *See Robinson v. Runyon*, 149 F.3d 507,

513 (6th Cir.1998) ("We are guided in this determination by the reality that intentional discrimination is often difficult to prove without reliance on circumstantial evidence. Rarely will there be direct evidence from the lips of the defendant proclaiming his or her ... animus."). However, if a plaintiff can provide direct evidence of "discriminatory motive in carrying out its employment decision" by an employer, that plaintiff can survive a motion for summary judgement. *See Smith v. Chrysler Corp.*, 155 F.3d 799, 805 (6th Cir.1998). "If a plaintiff can provide direct evidence of discriminatory intent, then the employer must prove by a preponderance of the evidence that the same employment decision would have been made in the absence of the discriminatory intent." *Standard v. A.B.E.L. Serv., Inc.*, 161 F.3d 1318, 1329–30 (11th Cir. 1998).

Mr. Dorchy alleges that following his absence from work as a result of his work-related back injury he "attempted to return to work in October, 1995, but was refused." *See* Plaintiff's Opposition to Defendant's Motion to Dismiss the Complaint and/or For Summary Judgment at 2 [hereinafter "Dorchy Opposition"]. The contention that WMATA "refused" to allow Mr. Dorchy to return to work may raise the specter of intentional discrimination based on Mr. Dorchy's disability. However, Plaintiff's failure to present any evidence to support this allegation necessarily forecloses proof of intentional discrimination. Thus, Mr. Dorchy fails to establish by any direct evidence that WMATA intentionally discriminated against him based on his disability. In the absence of direct evidence that WMATA discriminated against him in violation of the Rehabilitation Act, the Court will now ascertain whether Mr. Dorchy established discrimination by indirect evidence. As noted above, a plaintiff can establish discrimination through indirect evidence and survive a motion for summary judgment based on the analysis outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36

L.Ed.2d 668 (1973). This Circuit has explained the *McDonnell Douglas* framework as follows:

> the complainant must first establish a *prima facie* case of prohibited discrimination. Once he has done so, the burden then shifts to the employer to articulate legitimate, nondiscriminatory reasons for the challenged employment decision. Should the employer succeed in presenting such reasons, the burden then shifts back to the complainant, who then has an opportunity to discredit the employer's explanation. In *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), the Court held that, in producing nondiscriminatory reasons for its challenged action, the employer is not obligated to support these reasons with objective evidence sufficient to satisfy the "preponderance of the evidence" standard ... and that the plaintiff at all times retains the ultimate burden of persuasion.

*Aka v. Washington Hospital Ctr.*, 156 F.3d 1284, 1288–89 (D.C.Cir.1998) (citations omitted).

In order to establish a *prima facie* case of employment discrimination under the ADA:

> the plaintiff must show that (1) he or she is a disabled person within the meaning of the ADA, (2) he or she is able to perform the essential functions of the job with or without reasonable accommodation, and (3) he or she suffered an adverse employment decision because of his or her disability.

*Barnett v. U.S. Air, Inc.*, 157 F.3d 744, 748 (9th Cir.1998); *see also Aldrich v. Boeing Co.*, 146 F.3d 1265, 1269 (10th Cir.1998); *Deane v. Pocono Medical Ctr.*, 142 F.3d 138, 142 (3d Cir.1998) (en banc).

In its Motion to Dismiss, WMATA does not challenge the assertion that Mr. Dorchy is a disabled person as defined by the ADA. *See* WMATA Motion at 7 ("It is undisputed in this case that Mr. Dorchy

went out on workers' compensation on November 1, 1994 following an alleged on-the-job injury on October 31, 1994, returned on August 6, 1996 ... and went out again on workers' compensation in January of 1997."). On November 1, 1994, during the course of his employment for WMATA, Mr. Dorchy ruptured his L5 disk. As a result of this injury, Mr. Dorchy has a "left foot drop" and fifty percent "loss of function of the body as a whole." *See* Dorchy Opposition at 1–2. Because WMATA does not challenge Mr. Dorchy's alleged injuries or contend that Mr. Dorchy's injuries do not limit a major life activity, this Court will assume for the purposes of this motion that Mr. Dorchy is a disabled person as defined by the ADA. *See* 42 U.S.C. § 12102(2) ("The term "disability" means, with respect to an individual—(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual ...."); *see also Amariglio v. National R.R. Passenger Corp.*, 941 F.Supp. 173, 177–78 (D.D.C. 1996) ("As a threshold matter, the Court assumes, as do the defendants, that Amariglio's diabetic condition qualifies as a disability under the ADA."); *Hamlin v. Charter Township of Flint*, 942 F.Supp. 1129, 1137 (E.D.Mich.1996) ("[N]either party disputes that [the plaintiff] is disabled for purposes of the ADA.").

■ Mr. Dorchy must now demonstrate that he is able to perform the essential functions of his job with or without a reasonable accommodation. In order to determine the "essential functions" of Mr. Dorchy's job, the ADA directs that "consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8). In addition, regulations for enforcing the ADA issued by the Equal Employment Opportunity Commission and contained within the Code of Fed-

eral Regulations ("C.F.R.") advise that "[t]he term *essential functions* means the fundamental job duties of the employment position the individual with a disability holds or desires. The term 'essential functions' does not include the marginal functions of the position." 29 C.F.R. § 1630.2(n). The C.F.R. provides numerous examples of types of evidence that demonstrate whether a job function is essential. *See* 29 C.F.R. § 1630.2(n)(3).

■ Mr. Dorchy does not provide any evidence illustrating what tasks constitute the essential functions of the job of a B machinist. Mr. Dorchy's contention that WMATA has the burden of proving that Mr. Dorchy *cannot* perform the essential functions of his job misstates the relevant standard. *See* Dorchy Opposition at 8 ("Defendant WMATA has not shown that the Plaintiff is not qualified to perform the essential functions of his job as a B Machinist, as required under the ADA."). In support of this statement, Mr. Dorchy cites *Kalekiristos v. CTF Hotel Management Corp.*, 958 F.Supp. 641 (D.D.C.1997), *aff'd*, 132 F.3d 1481 (D.C.Cir.1997). However, *Kalekiristos* supports the contrary proposition, namely that the employee has the burden of proving that he *can* perform the essential functions of his job. *See Kalekiristos*, 958 F.Supp. at 660 ("The second element [of a *prima facie* case] requires a plaintiff, once he or she establishes membership in the protected ADA class, to then make a showing that he or she is a "qualified individual with a disability". In order to show that he is a "qualified individual with a disability", Kalekiristos must show that a reasonable jury could find that he could perform, with or without reasonable accommodation, the essential functions of the PM Linen Runner position.").

The only evidence presented by either party here, descriptive of the essential functions of the position of B Machinist, is a job description appended to WMATA's motion for summary judgement. The job

description provides the following "Position Summary":

> This is responsible vehicle maintenance work to involve assisting in the cleaning, disassembly, repair, assembly and/or installation of automotive/diesel engines, transmissions, large and small electric/pneumatic/hydraulic components, chassis and vehicle body repairs, including painting. Employee has limited latitude for independent judgment and action within established guidelines.

*See* WMATA Motion at Exhibit 5. Additionally, the job description lists the following "Examples of Duties":

- Assists in major repairs on all component parts of the vehicle.

- Performs routine repairs, cleaning, lubrication, adjustments and proper maintenance of assigned equipment. Performs brake jobs, chassis work, air system repairs and conducts minor and major inspections.

- *Performs tasks which may include heavy physical labor.*

*See* WMATA Motion at Exhibit 5 (emphasis added). Mr. Dorchy argues that "whether heavy lifting was an essential function of his position as a B Machinist" is a disputed material fact. *See* Dorchy Opposition at 8. This contention is merely argument. Mr. Dorchy fails to provide any evidence supporting his contention that heavy lifting was not an essential function of his job, while WMATA has provided a job description for a B machinist position that specifically identifies "heavy physical labor" as a component of the job. The statutory language of the ADA states that "[f]or the purposes of this subchapter, consideration shall be given to the employer's judgement as to what functions of a job are essential, and if an employer has prepared a written description ... this description shall be consid-

ered evidence of the essential functions of the job." 42 U.S.C. § 12111(8).

Mr. Dorchy enumerates his injuries and subsequent physical limitations in his Opposition to WMATA's motion for summary judgment. *See* Dorchy Opposition at 1–2. He notes that in December 1995, he had a "fifty percent loss of function of the body as a whole" and suffered from a "left foot drop," limiting his ability to "lifting up to 35 pounds and steam cleaning for up to two hours per day." *See id.* at 2. While failing to adequately dispute WMATA's description of what tasks constitute the essential functions of his position, Mr. Dorchy admits that his injuries limited the types and amount of work he could do. Thus, it was incumbent on him to demonstrate by credible evidence that he could perform the essential functions of his job as defined in the written job description by WMATA. This Court finds that, based on WMATA's job description for a B Machinist and based on Mr. Dorchy's need to limit his job to less than full duty work,[4] Mr. Dorchy is not able to perform the essential functions of his job without an accommodation.

This Court now addresses whether a reasonable accommodation would have permitted Mr. Dorchy to perform the essential functions of his position. The ADA provides that a

> "reasonable accommodation" may include—
>
> . . .
>
> (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

---

4. Mr. Dorchy never states in his Opposition brief the exact nature of the accommodation that he sought from WMATA. WMATA's reply brief states and Mr. Dorchy's Opposition brief supports the contention that Mr. Dorchy sought a "mechanic position limited to 'bench work.'" WMATA Reply at 10.

42 U.S.C. § 12111(9) (1995). This list is not exhaustive, but merely identifies examples of reasonable accommodations. The plaintiff bears the burden of "showing the existence of a reasonable accommodation." *Barnett,* 157 F.3d at 749; *see Willis v. Conopco, Inc.,* 108 F.3d 282, 285 (11th Cir.1997); *Bombard v. Fort Wayne Newspapers, Inc.,* 92 F.3d 560, 563–64 (7th Cir. 1996); *Monette v. Electronic Data Sys. Corp.,* 90 F.3d 1173, 1183 (6th Cir.1996). Under the statute, an employer is not required to give an employee the specific accommodation that he or she requests. It is merely required to make *a* reasonable accommodation. The District of Columbia Circuit recently recognized that there is a hierarchy among reasonable accommodations. Based on Congress' directive that "[e]fforts should be made ... to accommodate an employee in the position that he or she was hired to fill before reassignment is considered," the Circuit Court of Appeals directed that reassignment is "an option to be considered only after other efforts at accommodation have failed." *Aka v. Washington Hosp. Ctr.,* 156 F.3d 1284, 1301 (D.C.Cir.1998).

█ The only accommodation suggested by Mr. Dorchy was that WMATA modify his job to allow him to perform light-duty work exclusively. *See* Dorchy Opposition at 7–9; WMATA Motion at 8. However, the essential functions of Mr. Dorchy's job as a B Machinist are not limited to light duty work, as evidenced by WMATA's job description for a B Machinist. If the position of a B Machinist requires performance of certain tasks essential to the job and Mr. Dorchy cannot perform those tasks with a reasonable accommodation, WMATA is not required by the ADA to change the essential functions of the job. *See Soto–Ocasio v. Federal Express Corp.,* 150 F.3d 14, 20 (1st Cir.1998) ("To be sure, the term 'reasonable accommodation' may include 'job restructuring [and] part-time or modified work schedules.' However, the ADA does not require an employer 'to reallocate job duties in order to change the essential function of a job.'" (citation omit-

ted)). Mr. Dorchy must proffer a reasonable accommodation that will allow him to perform the essential functions of a Class B Machinist. Having failed to suggest a reasonable accommodation that will allow him to perform the tasks of a Class B Machinist, Mr. Dorchy has failed to meet his threshold burden that he can perform the essential functions of his job with a reasonable accommodation.

Mr. Dorchy's failure to establish that he can perform the essential functions of his job, with or without a reasonable accommodation, negates his ability to establish a *prima facie* case of discrimination under the Americans with Disabilities Act. Because the standards under the ADA are the same under the Rehabilitation Act, it follows that plaintiff failed to sustain his burden of establishing a *prima facie* case of discrimination under the Rehabilitation Act necessary to survive summary judgment. *See* 29 U.S.C. § 794(d) ("The standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act of 1990."). Accordingly, WMATA's motion for summary judgment on Mr. Dorchy's claim of discrimination under the Rehabilitation Act is granted.

### B. Title VII Failure to Accommodate a Disability

In count II of his Amended Complaint, Mr. Dorchy alleges that WMATA discriminated against him based on his race in violation of Title VII by failing to make an accommodation for his disability when he attempted to return to work in October 1995. Mr. Dorchy contends that WMATA made accommodations for several white individuals with disabilities when they attempted to return to work at WMATA after sustaining work-related injuries. *See* Dorchy Opposition at 2–4. Mr. Dorchy has provided no direct evidence of racial

discrimination in support of this claim. *See* Dorchy Opposition at 5 (indicating that Mr. Dorchy filed a charge with the EEOC "based upon his attempt to return to work in October, 1995 ... and the refusal of Defendant WMATA to reinstate him in his previous job ... or to make reasonable accommodations for him to return to work" but failing to support this allegation with any evidence from the record). As with Mr. Dorchy's Rehabilitation Act claim, absent any direct evidence of racial discrimination, we apply the analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), to Mr. Dorchy's Title VII claim. *See supra* III.A.

In *McDonnell Douglas*, the Supreme Court established the "basic allocation of burdens and order of presentation of proof in Title VII cases alleging discriminatory treatment." *Parker v. Secretary, U.S. Dep't of Hous. and Urban Dev.*, 891 F.2d 316 (D.C.Cir.1989). As explained above, in order to survive summary judgment a plaintiff must establish a *prima facie* case of discrimination. "In a Title VII action, a *prima facie* case is made out simply by showing that a qualified plaintiff who is a member of a protected class was disadvantaged in favor of a person who is not a member of the protected class." *Whitacre v. Davey*, 890 F.2d 1168, 1169–70 (D.C.Cir.1989). In *McDonnell Douglas*, the Court said that a plaintiff may establish a *prima facie* case of discrimination based on a failure to hire by establishing "(i) that [plaintiff] belongs to a racial minority; (ii) that [plaintiff] applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite [plaintiff's] qualifications, [plaintiff] was rejected; and (iv) that, after [plaintiff's] rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." *McDonnell*

*Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. Other cases have modified the *McDonnell Douglas prima facie* standard to encompass other forms of discrimination under Title VII. *See, e.g., Gunning v. Runyon*, 3 F.Supp.2d 1423 (S.D.Fla.1998) (*prima facie* case for failure to accommodate based on religion); *Beckwith v. Career Blazers Learning Ctr. of Washington, D.C.*, 946 F.Supp. 1035 (D.D.C.1996) (*prima facie* case for retaliation based on race); *Miller v. United States*, 603 F.Supp. 1244 (D.D.C.1985) (*prima facie* case for denial of promotion based on race). In the case at bar, Mr. Dorchy claims that WMATA discriminated against him, based on his race, by failing to make an accommodation for his disability, whereas it accommodated non-minority individuals with disabilities.

In *Webb v. St. Louis Post–Dispatch*, the United States Court of Appeals for the Eighth Circuit held that the employer's alleged failure to accommodate the plaintiff's disability where it had made such accommodations for white individuals "possibly constituted discriminatory treatment." *See Webb v. St. Louis Post–Dispatch*, 51 F.3d 147, 149 (8th Cir.1995). The *Webb* court stated that "[w]hile '[t]he question whether an individual is qualified [for a job] is certainly a legitimate one upon which to base an employment decision,' we believe there was conflicting evidence as to whether this reason was a pretext for discrimination." *See id. Webb*, however, does not set out a test for a *prima facie* case under Title VII of failure to accommodate a disability based on race. In fact, this Court is not aware of any case law defining such a test. Drawing upon the *McDonnell Douglas* analysis, this Court finds that, in this context, in order to establish a *prima facie* case of discrimination Mr. Dorchy must show that (1) he is a member of a protected group; (2) that he has a disability;[5] (3) that he

---

**5.** In setting out this standard under Title VII, this Court will refrain from deciding whether an individual must possess a disability as de-

fined under the ADA. In the instant motion, WMATA has not challenged Mr. Dorchy's assertion that he has a disability. In fact,

requested an accommodation for his disability; (4) that his employer failed to make a reasonable accommodation for his disability; and (5) that other similarly-situated employees who were not members of a protected group were given accommodations for their disabilities. *See McDonnell Douglas*, 411 U.S. at 802 n. 13, 93 S.Ct. 1817 ("The facts necessarily will vary in Title VII cases, and the specification . . . of the *prima facie* proof required from respondent [in this case] is not necessarily applicable in every respect to differing factual situations.").

First, Mr. Dorchy, as an African–American, is a member of a protected class. *See Coward v. ADT Security Sys., Inc.*, 140 F.3d 271, 272–73 (D.C.Cir.1998) (uncontested by employer that African–Americans are members of a protected class). Second, as discussed above, WMATA does not contest that Mr. Dorchy has a disability. Accordingly, this Court will assume for purposes of this analysis that Mr. Dorchy is disabled. Third, WMATA's Motion to Dismiss concedes that as an accommodation for his disability, Mr. Dorchy requested that he be placed in a light duty position when he attempted to return to work in October 1995. *See* WMATA Motion at 8 ("WMATA 'had no light duty program or light duty position to place [Dorchy] in' when Mr. Dorchy's physician released him to return to work in October 1995."). Fourth, as indicated above, WMATA did not put Mr. Dorchy in a light duty position when he attempted to return to work in October 1995. *See id.* Thus, Mr. Dorchy meets four of the five requirements to establish a *prima facie* case of discrimination under *McDonnell Douglas*.

 Finally, WMATA argues that Mr. Dorchy does not satisfy the fifth requirement, that other employees who were not members of a protected group were given accommodations for their disabilities, because he does not cite any examples of non-minority individuals being "placed in light duty positions during the period when he himself sought a light duty position." *See* WMATA Reply at 6. To support this proposition, WMATA cites *Laffey v. Northwest Airlines, Inc.*, 567 F.2d 429 (D.C.Cir.1976) and *Milton v. Weinberger*, 645 F.2d 1070 (D.C.Cir.1981). WMATA argues that Mr. Dorchy must show that the individuals to which he compares himself for purposes of analysis under Title VII, non-minority individuals, received more favorable treatment during the six month statutory period for filing a charge with the Equal Employment Opportunity Commission. *See* WMATA Reply at 6 ("Plaintiff has failed to show disparate treatment *within the filing period* by producing evidence that whites were placed in light-duty positions during that time.").

However, both *Laffey* and *Milton* address whether a plaintiff timely filed an administrative charge with the EEOC, not whether a plaintiff successfully demonstrated discriminatory actions within the statutory filing period. *See Milton*, 645 F.2d at 1075–76 ("[T]he court held that where the 'violations complained of were of a continuing nature . . . the filing is timely as to all similarly situated employees regardless of when the first discriminatory incident occurred.'"); *Laffey*, 567 F.2d at 473 ("[D]iscrimination is not limited to isolated incidents but pervades a series or pattern of events which continue to within ninety days of the filing of the charge with the Commission. . . ."). WMATA does not argue that Mr. Dorchy's EEOC charge was untimely with respect to his allegation of racial discrimination based on WMATA's failure to accommodate his disability.

WMATA vigorously urges the Court to find that Mr. Dorchy must demonstrate that WMATA placed non-minority individuals with disabilities in light duty positions during the same time period that Mr. Dorchy sought such a placement and ar-

WMATA's arguments in its pleadings assume that Mr. Dorchy has a disability under the ADA. For the purposes of this motion, this Court will proceed based on the same assumption.

gues that Mr. Dorchy has provided no evidence that non-minority employees were placed in light duty positions during this "relevant" time period. *See* WMATA Reply at 6 ("[P]laintiff has failed to produce evidence that white employees were placed in light duty positions during the time period when he himself sought a light duty position. . . ."). Case law, however, does not support this proposition. Discussing limitations on discovery in Title VII disparate treatment cases, the court in *Onwuka v. Federal Express Corporation* suggests a broader reasonable time period standard:

> [D]iscovery, in the Title VII context, must be limited to the practices at issue in the case and, where an individualized claim of disparate treatment is alleged, the discovery of information concerning other employees should be limited to employees who are similarly situated to the Plaintiff. Accordingly, Courts have frequently tailored discovery requests, as to historic company records, to encompass a "reasonable time period" both before and after the discriminatory event being alleged.

*Onwuka v. Federal Express Corp.*, 178 F.R.D. 508, 516–17 (D.Minn.1997) (citations omitted). The *Onwuka* court cites cases indicating that discovery of "several months before and two years after alleged discrimination" and discovery "limited to two years immediately preceding employee's termination" was reasonable. *See id.* at 517. Ultimately, the *Onwuka* court allowed the plaintiff to examine records within three years of the alleged discrimination. *See Onwuka,* 178 F.R.D. at 518. ▮▮▮ Drawing upon these examples, this Court can infer that if courts allowed discovery into a period of months or years prior to the alleged discrimination, then evidence found within those time periods would be relevant to proving the alleged discrimination. This Court has found no case law supporting the proposition that discriminatory conduct must be found to occur within the six month period that a

plaintiff must file an EEOC charge, and this Court finds that establishing a limitation on the relevant period of inquiry to six months, the statutory period an individual has to file an EEOC charge, would be unreasonably limiting and contrary to the remedial intent of the statute.

Mr. Dorchy cites several examples from deposition testimony where WMATA employees indicate that non-minority individuals were placed in light duty positions following injuries. *See* Dorchy Opposition at 2–4. In its reply brief, WMATA includes the declaration of Wayne Roberts, a current Shop Maintenance Supervisor in the Machine Shop at WMATA, and Mr. Dorchy's former supervisor. *See* WMATA Reply, Exh. 1 at 1. Mr. Roberts stated that all but two of the individuals Mr. Dorchy references in his opposition brief returned to work between October 1990 and January 1995, following injuries. *See id.* at 4. These occurrences were all within five years of Mr. Dorchy attempt to return to work in October 1995.

Unlike the *Onwuka* court, this Court's purpose is to determine whether Mr. Dorchy presents sufficient evidence of discrimination to stave off summary judgment. In considering a summary judgment motion, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). This court is satisfied that Mr. Dorchy's evidence of white individuals being placed in light duty positions following injuries, bolstered by WMATA's evidence of the specific time period in which those individuals worked for WMATA, is adequate to conclude for the purposes of defeating summary judgment that the alleged disparate treatment of Mr. Dorchy and the non-minority individuals occurred within a sufficiently proximate time period.

▮▮▮ However, this Court's inquiry does not end there. This Court must also determine whether the non-minority indi-

viduals Mr. Dorchy claims were given light duty positions following their injuries were "similarly situated" to himself:

> In order for two or more employees to be considered similarly-situated for the purpose of creating an inference of disparate treatment in a Title VII case, the plaintiff must prove that all of the relevant aspects of [his] employment situation are "nearly identical" to those of the [other] employees who [he] alleges were treated more favorably. The similarity between the compared employees must exist in all relevant aspects of their respective employment circumstances.

*Calhoun v. Johnson*, No. Civ.A. 95–2397(PLF), 1998 WL 164780, at *5 (D.D.C. March 31, 1998) (quoting *Pierce v. Commonwealth Life Ins., Co.*, 40 F.3d 796, 802 (D.C.Cir.1987)). In order to ascertain whether Mr. Dorchy is "similarly situated" to other individuals for the purpose of this inquiry, this Court will consider the facility in which he worked, his job therein, and the existence of his disability. These three aspects sufficiently define the group of people most likely to encounter the same type of discrimination that Mr. Dorchy alleges.

Mr. Dorchy worked in WMATA's Department of Bus Services, which includes the "Paint Shop" and the "Machine Shop." *See* WMATA Reply at 9. The non-minority individuals that Mr. Dorchy cites in his opposition brief as having been given less strenuous jobs following their injuries all worked in the Department of Bus Services. *See* Opposition at 2–3 & Exhs. A–H. The employees in the two different shops who were not supervisors, according to Mr. Dorchy's opposition, apparently performed different types of physical labor. *See id.* (describing positions such as AA Painter, AA Mechanic Painter, and Mechanic). As noted above in the discussion of the relevant time period, Mr. Dorchy presents deposition testimony from several individuals that numerous employees in the Department of Bus Services were transferred to different positions following their return to

work after sustaining injuries. This Court finds, for the above reasons, that Mr. Dorchy is similarly situated to these individuals for purposes of establishing a disparate treatment claim under Title VII.

Mr. Dorchy has provided sufficient evidence to support his allegation that other similarly situated individuals who were not members of a protected group were given accommodations for their disabilities, and has, therefore, met the fifth prong of the test. Having also satisfied the first four prongs, this Court finds that Mr. Dorchy has established a *prima facie* case of discrimination under Title VII.

The inquiry now turns to whether WMATA has "articulate[d] some legitimate, nondiscriminatory reason" for refusing to transfer Mr. Dorchy to a light-duty job. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). WMATA argues that there were no official "light duty" positions in which to place Mr. Dorchy when he attempted to return to work in October 1995. *See* WMATA Motion at 8; WMATA Reply at 8 ("As note above, WMATA had no light-duty program from October 1994, when Mr. Dorchy reinjured his back and went out (again) on workers' compensation, to January 1997, the last time he worked at WMATA before again going out on workers' compensation."). However, Mr. Dorchy's does not allege that WMATA failed to place him in a "light duty" program. Mr. Dorchy alleges that WMATA placed individuals in less strenuous positions when they returned to work following injuries, but it refused to accord him the same opportunity, regardless of whether an official "light-duty" program existed at WMATA. *See* Dorchy Opposition at 2 ("[A]lthough Plaintiff Charles A. Dorchy, an American of African descent, was not allowed to return to his job in the machine shop working on small engines in October, 1995, other white employees were transferred by white supervisors to less strenuous jobs after returning to work following disabilities."). WMATA does not respond

to the form of discrimination that Mr. Dorchy alleges under Title VII, namely that the other non-minority employees were placed in positions that permitted them to work, notwithstanding their injuries. Indeed, WMATA's only explanation for not modifying Mr. Dorchy's job duties or offering him a different job was that it did not have a light-duty program in which to place Mr. Dorchy in October 1995. This Court finds that the absence of a light duty program during the statutory period Mr. Dorchy was required to file his EEOC charge does not amount to a legitimate, non-discriminatory reason for failing to place Mr. Dorchy in a less strenuous job when he attempted to return to work in October 1995. Accordingly, Mr. Dorchy has established a *prima facie* case of discrimination under Title VII. By failing to state a legitimate, non-discriminatory reason for its actions, WMATA has not met its burden under the *McDonnell Douglas* standard to sustain its motion for summary judgement.

### C. Title VII Promotion and Training/Preparation

WMATA argues that Mr. Dorchy's claim of racial discrimination in promotions and training is time-barred. Mr. Dorchy filed a charge with the Equal Employment Opportunity Commission on November 27, 1995, alleging racial discrimination in the "terms and conditions of employments." *See* WMATA Motion at Exh. 4. On August 26, 1996, the EEOC issued a rightto-sue letter. Mr. Dorchy timely filed suit in this Court on or about November 19, 1996. *See* WMATA Motion at 1 n. 2.

In his Amended Complaint, Mr. Dorchy alleges that he was "denied employment and promotion in his employment, [and] has suffered a loss of pay...." *See* Amended Complaint at 3. He further alleges, *inter alia,* that WMATA maintained discriminatory practices with respect to allowing minority and non-minority individuals the opportunity to practice on machinery and shadow higher level employees when preparing to qualify for promotions. *See* Dorchy Opposition at 4.

WMATA argues in its motion for summary judgment that due to his injury, Mr. Dorchy was not working and did not apply for any job, job training, or promotion at WMATA between 1994 and October 1995, and, therefore, WMATA could not have taken any action during that period that would constitute discrimination. *See* WMATA Motion at 6–7; *see also* Dorchy Deposition on April 6, 1998 at 129. Title VII requires that individuals file a charge with the EEOC within 180 days of any alleged unlawful employment practice. *See* 42 U.S.C. § 2000e–5(e)(1); *Beall v. Abbott Lab.,* 130 F.3d 614, 620 (4th Cir. 1997) ("Incidents outside of the statutory window are time-barred unless they can be related to a timely incident as a 'series of separate but related acts' amounting to a continuing violation."). Mr. Dorchy was not working at WMATA between October 1, 1994 and the date he filed his EEOC charge on November 27, 1995; therefore, he could not have been denied any jobs, training, or promotions in the 180 day period immediately prior to filing his EEOC charge. Because Mr. Dorchy has not provided any explanation for failing to file a charge within the requisite time period, his claim that he was denied employment and promotion in employment is time-barred.

Additionally, Mr. Dorchy did not make any allegations in his opposition to WMATA's motion for summary judgment that WMATA's alleged discrimination constituted a continuing violation of Title VII, in order to extend the 180–day statute of limitations. A plaintiff can establish a continuing violation by showing "(1) a series of related acts one or more of which falls within the limitations period, or (2) the maintenance of a discriminatory system both before and during the limitations period." *Miller v. United States,* 603 F.Supp. 1244, 1247–48 (D.D.C.1985) (citing

*Valentino v. United States Postal Service*, 674 F.2d 56, 65 (D.C.Cir.1982)). As discussed above, Mr. Dorchy has not alleged or established that he applied for and was rejected for a position or a promotion within the requisite limitations period. He, therefore, fails to establish a continuing violation under the first basis. Regarding the second, Mr. Dorchy acknowledges that WMATA does not maintain a continuing discriminatory system: "[t]he claims of discrimination ... reflect disparate treatment of white and Afro–American employees, although the formal procedures of selection and job assignment of Defendant WMATA are not discriminatory in nature." Dorchy Opposition at 6. Accordingly, Mr. Dorchy cannot establish that WMATA's actions constituted a continuing violation under Title VII in order to enlarge the 180–day statute of limitations. Mr. Dorchy's failure to identify any discrimination based on WMATA's practices in hiring or promotion that took place in the 180 day period before he filed his charge with the EEOC requires this Court to grant WMATA's motion for summary judgment on Mr. Dorchy's claim on this issue.

## IV. CONCLUSION

In the order of this Court dated November 10, 1998, the Court denied the Motion to Dismiss the Complaint and/or for Summary Judgment of Defendant Washington Metropolitan Area Transit Authority (WMATA) [32] and indicated that an opinion would follow. In light of the Motion to Dismiss the Complaint and/or for Summary Judgment of Defendant Washington Metropolitan Area Transit Authority (WMATA), the opposition thereto, the foregoing analysis in this opinion, and the entire record in this case, it is this ____ day of February, 1999, hereby

**ORDERED** that the Order of this Court dated November 10, 1998 be, and the same is hereby, **VACATED**; and it is further

**ORDERED** that WMATA's Motion to Dismiss the Complaint [32–1] be, and the same is hereby, **DENIED**; and it is further

**ORDERED** that the Motion for Summary Judgment of Defendant Washington Metropolitan Area Transit Authority (WMATA) [32–2] be, and the same is hereby, **GRANTED IN PART AND DENIED IN PART**; and it is further

**ORDERED** that WMATA's motion for summary judgment on Mr. Dorchy's Rehabilitation Act claim is **GRANTED**; and it is further

**ORDERED** that WMATA's motion for summary judgment on Mr. Dorchy's Title VII claim of racial discrimination for failure to accommodate is **DENIED**; and it is further

**ORDERED** that WMATA's motion for summary judgment on Mr. Dorchy's claim of racial discrimination in hiring and/or promotion is **GRANTED**.