**Raymond J. MILLER, et al., Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 79–2405.**

United States District Court, District of Columbia.

March 8, 1985.

**1246**

J. Lincoln Woodard, Washington, D.C., for plaintiffs Raymond Miller, Robert Johnson, Melvin Birch, Louis Brown, and Ezell Hardy.

Louis Fireison, Mary P. Nyiri, Bethesda, Md., for plaintiffs Wallace Roney, Dwight Jackson, Felton Carmichael, William Penn, Ossie Bennett, Anthony Sprufero, Edward Morris, and Juanita McKoy.

R. Lawrence Dessem, Judith F. Ledbetter, Theodore C. Hirt, Susan Riley, U.S. Dept. of Justice, Civ. Div., Washington, D.C., for defendant.

## OPINION

HAROLD H. GREENE, District Judge.

This Title VII suit,[1] was originally filed as a class action. However, it became quickly apparent that not only was there no class within the meaning of the applicable rules[2] but that many of the individuals named in the complaint had never heard of the lawsuit and had no intention of participating therein.[3] Additional plaintiffs were dismissed for their failure to comply with such requirements as the filing of timely notice, failure to exhaust administrative remedies, or failure to comply with other jurisdictional prerequisites.[4] Just recently, and again now (see Part IV *infra*), claims had to be dismissed because particular plaintiffs refused to participate in legitimate discovery.[5]

The lawsuit is now in a procedural posture where, in the context of government motions to dismiss and for summary judgment, the remaining claims must be examined in some detail. It appears that, once again, almost all of plaintiffs' claims challenged by the government are substantially flawed—procedurally, substantively, or both.

### I

The government has moved for summary judgment with respect to the claims of eight of the remaining plaintiffs.[6] That motion will be granted.

■ 29 C.F.R. § 1613.214(a)(i) permits an employee who believes that he has been discriminated against to bring the fact of that discrimination to the attention of the agency's EEO counselor within thirty days.[7] It is well established that as a general matter a lawsuit alleging such discrimination may be maintained only if the employee has complied with that thirty-day filing requirement. *Milton v. Weinberger,* 645 F.2d 1070, 1074–77 (D.C.Cir.1981); *Miller v. Smith,* 584 F.Supp. 149, 151–52 (D.D. C.1984). The reasons for that requirement

---

**1.** Section 717 of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16.

**2.** Fed.R.Civ.P. 23(a).

**3.** See Order of October 31, 1980, denying plaintiffs' motion for class certification at 3. See also Court's orders of September 3, 1981, September 20, 1984 (granting counsel's motion for leave to withdraw as counsel for various plaintiffs because they did not communicate with counsel), and orders of September 2, 1983, November 19, 1984, and December 21, 1984 (dismissing the claims of many of these same plaintiffs for failure to prosecute).

**4.** See Order of September 3, 1981, and Memorandum and Order of March 19, 1984.

**5.** See Memorandum Order dated February 5, 1985, dismissing the action of plaintiff Starlord Pickett.

**6.** Dwight Jackson, Felton Carmichael, William Penn, Ossie Bennett, Anthony Sprufero, Edward Morris, Juanita McKoy, and Robert Johnson.

**7.** This must be done within thirty days of the alleged discriminatory activity or, if a personnel action is involved, within thirty days of its effective date.

are obvious. It stems from the "congressional design to vest in the federal agencies and officials engaged in hiring and promoting personnel 'primary responsibility' for maintaining nondiscrimination in employment." *Kizas v. Webster*, 707 F.2d 524, 544 (D.C.Cir.1983). Moreover, absent a start in the administrative process, there can be no exhaustion of that process—a condition precedent to the filing of a discrimination suit under Title VII. *Id.* See also *Brown v. General Services Administration*, 425 U.S. 820, 832, 96 S.Ct. 1961, 1967, 48 L.Ed.2d 402 (1976); *Milton v. Weinberger, supra*, 645 F.2d at 1074–77; *Hoffman v. Boeing*, 596 F.2d 683, 685 (5th Cir.1979).

In this case, all the plaintiffs filed substantially identical form complaints with EEOC personnel on November 3, 1976.[8] Yet, with the exception of one plaintiff, Edward Morris, the acts of discrimination of which they complained occurred nowhere near the thirty-day period preceding that date: some of the plaintiffs rely on actions of the Marshal's Service which occurred years earlier (typically in the early 1970s) or years later (as late as last year).[9] However, none of the plaintiffs filed administrative complaints within the thirty days after these subsequent alleged acts of discrimination occurred; by and large the plaintiffs simply rely on their administrative complaint of November 1976 as the jurisdictional prerequisite for their lawsuit.[10] But that complaint, as noted above, is untimely and entirely insufficient.

Plaintiffs attempt to overcome this infirmity by reliance on the theory of continuing discrimination, arguing that the "[s]trict application of any time limits set forth in the Federal Regulations is not appropriate here as the Plaintiffs have been subjected to a continuing course of discriminatory conduct...." Memorandum of Points and Authorities at 9. See *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977).

## II

It is useful at this juncture to analyze the posture of this case. The government has moved for summary judgment, and the question therefore is whether there are genuine issues of material fact which would preclude the granting of that motion. One of the elements of plaintiff's case is the submission of timely administrative complaints of discrimination, but, as discussed *supra*, they cannot meet that requirement. The next level of inquiry, therefore, must be whether a systematic pattern of discrimination existed which would excuse the failure to file timely complaints. The existence of such a pattern has also been placed in issue by the government's motion, and the Court must now inquire whether there is a genuine issue of material fact with respect to the existence, not of individual acts of discrimination, but of systematic, continuing discrimination. It is to that question that the Court now turns.

 To establish a continuing violation, a plaintiff must show either (1) a series of

---

**8.** In addition to filing these form complaints, plaintiffs Juanita McKoy and Dwight Jackson also filed individual complaints on June 25, 1976, and August 11, 1976, respectively.

Felton Carmichael and William Penn also filed separate informal complaints with the Marshal's Service EEO Office, but both plaintiffs withdrew their informal charges on February 12, 1976.

**9.** Morris is the one exception; but while denial of one of his promotions occurred within the thirty-day period, the dozens of other discriminatory actions of which he complains took place long before or long after the time he filed his administrative complaint. In any event, Morris

has failed to allege any facts to establish a timely *prima facie* claim of racial discrimination or retaliation in connection with promotions, education, training, discipline, or special assignments. See also, note 24, *infra*.

**10.** For the reasons explained more fully below, this is not a case of continuing discrimination. Thus, the incidents of alleged discrimination occurring after the filing of the plaintiffs' EEO complaint cannot be considered so closely related to their earlier claims that further agency action would have been redundant. See *Brown v. Puget Sound Electrical Apprenticeship and Training Trust*, 732 F.2d 726, 730 (9th Cir.1984).

related acts, one or more of which falls within the limitations period, or (2) the maintenance of a discriminatory system both before and during the limitations period. *Valentino v. United States Postal Service,* 674 F.2d 56, 65 (D.C.Cir.1982); B. Schlei & P. Grossman, *Employment Discrimination Law* at 232 (Supp.1979). Except for Morris, none of the plaintiffs satisfies the first test, and in any event, plaintiffs are not relying upon it as a basis for their claims. Rather, they allege that the U.S. Marshal's Service maintained a discriminatory system both before and during the limitations period.

■ Plaintiffs, however, have not identified, through the submission of factual evidence, any specific employment practice or policy of the United States Marshal's Service relating to promotions,[11] special assignments, education and training programs, or discipline which existed during the limitations period,[12] or which exist today, that are racially discriminatory. Instead, they cite to a number of instances where they did not receive certain benefits and argue that this proves that the Marshal's Service is engaged in a continuing course of discriminatory conduct.[13]

■ The record before the Court reveals that each of the promotion decisions which plaintiffs challenge involved merit promotions for which specific application had to be made, and the disciplinary decisions,

special assignments, and selections for education and training programs were likewise made on a case-by-case basis and, by their very nature, they were not continuing.[14] These discrete acts do not fit the continuing violation theory, *McKenzie v. Sawyer,* 684 F.2d 62, 72 (D.C.Cir.1982); *Stoller v. Marsh,* 682 F.2d 971, 975 (D.C.Cir.1982); *Milton v. Weinberger, supra,* 645 F.2d at 1076–77; *Klapac v. McCormick,* 640 F.2d 1361, 1366 (D.C.Cir.1981), especially where, as here, no present violation exists. *United Air Lines, Inc. v. Evans, supra,* 431 U.S. at 557–58, 97 S.Ct. at 1888–89.

■ To be sure, the systematic denial of promotions or other systematic discriminatory personnel actions may, in appropriate circumstances, be regarded as the maintenance of a discriminatory system and, on that basis, a plaintiff may sweep into his proof employer activities which would otherwise be untimely. *Fisher v. Procter and Gamble Manufacturing Co.,* 613 F.2d 527, 543 (5th Cir.1980); *Allen v. Amalgamated Transit Union Local 788,* 554 F.2d 876, 881 (8th Cir.1977). It is also clear, however, that the decision on whether the case is, in fact, one of continuing discrimination, must be made by the Court on a case-by-case basis *Delaware State College v. Ricks,* 449 U.S. 250, 258 n. 9, 101 S.Ct. 498, 504 n. 9, 66 L.Ed.2d 431 (1980).

---

**11.** Thus, plaintiffs have not challenged, as racially discriminatory, the rating or ranking procedure used by the United States Marshal's Service to determine the "best qualified" applicants for the position in question.

**12.** Plaintiffs do assert that the past promotion policies of the Marshal's Service could, and in fact were, manipulated to discrimination against black applicants. In support of this claim, plaintiffs cite to a 1973 investigative report of the Complaint Adjudication Officer and a subsequent Report issued by the Taft Committee which criticized the promotion panel system previously in effect as racially insensitive. These reports further found that some of the panel's promotion decisions reflected "favoritism" and a "buddy system." However, this promotion panel system was replaced effective August 2, 1976—almost four months before plaintiffs filed their administrative complaint. Plain-

tiffs have not challenged the promotion practices and procedures currently in place. See note 11, *supra.* Thus, even assuming *arguendo,* that the past promotion panel system was discriminatory, plaintiffs cannot use the continuing violation theory to resurrect claims about discriminatory conduct concluded in the past. *McKenzie v. Sawyer,* 684 F.2d 62, 72 (D.C.Cir. 1982).

**13.** Under plaintiffs' theory, the mere fact that they, as black deputies, were denied certain promotions, special assignments, and educational and training opportunities, is sufficient to state a *prima facie* case of race discrimination. That is not the law.

**14.** Affidavits of Kenneth C. Holecko (Personnel Officer, United States Marshal's Service) and Donna Mitchell (Special Assignment Coordinator of the Marshal's Service from 1971 to 1978).

With respect to that issue, the Court would not be justified in relying solely on the plaintiffs' own conclusory and unsubstantiated assertions; if such assertions constituted the appropriate test, any party could escape the time limits imposed by law simply by making sweeping statements. In a case where a particular plaintiff's claim of systematic discrimination is not challenged, a court would, of course, be justified in trying that claim on a continuing violation theory. However, in the instant case, defendants have produced a very substantial record consisting of deposition testimony, affidavits, admissions, and uncontradicted statements of material fact which reveal that this case is not one of systematic discrimination. Compare *Catrett v. Johns-Manville Sales Corp.*, 756 F.2d 181 (D.C.Cir.1985). As noted below, the evidence, viewed in the light most favorable to plaintiffs, consists only of a few isolated *prima facie* claims of discrimination,[15] all of which occurred long before or long after the filing of plaintiffs' EEO complaint.

█ In order to establish a prima facie case, a plaintiff must show, *inter alia*, (1) that he belongs to the protected group, (2) that he was qualified for the particular personnel benefit (*e.g.*, promotion), (3) that he applied for that benefit (where application was required), and (4) that other employees with similar qualifications who were not part of the protected group were given those benefits at the time they were denied to the plaintiff. *Freeman v. Lewis*, 675 F.2d 398, 400 (D.C.Cir.1982). The vast majority of plaintiffs' claims fail to satisfy this test.

Thus, many of the plaintiffs cannot allege facts which would demonstrate[16] that they applied for or were at all qualified for the promotions, training opportunities, or special assignments they were seeking,[17] and others cannot identify any particular white employee or employees who were treated more favorably.[18] Indeed, the beneficiaries of many of the personnel actions of which plaintiffs complain were other black employees,[19] sometimes even other plaintiffs in this lawsuit.[20]

It is also significant, at least in a context where the Court is attempting to discern whether a viable claim of systematic discrimination exists, that many of the supervisors charged with racial discrimination are themselves black.[21] In addition, the EEO Officer of the U.S. Marshal's Service,

---

**15.** The Court is mindful of its duty, in the context of a motion for summary judgment, to construe all evidence and to resolve all inferences that can be drawn therefrom in favor of plaintiffs. Plaintiffs, however, continue in the main to rely upon sweeping and conclusory allegations of discrimination, and they have largely failed to allege specific names, dates, or underlying facts to establish timely *prima facie* claims. Thus, summary judgment is appropriate.

The alternative, to await testimony at trial, would involve an enormous waste of judicial and other resources since the various plaintiffs are each alleging a very large number of discrete acts of discrimination the vast majority of which lack legal validity and which, for the reasons discussed below, therefore cannot be regarded as constituting components of a systematic discrimination scheme.

**16.** At trial, plaintiffs would have the burden of proving a prima facie case of discrimination by a preponderance of the evidence. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981). If plaintiffs are unable to allege

specific facts in opposition to defendants' motion for summary judgment, which would show that they could present a *prima facie* case, summary judgment must be granted. *Minor v. Lakeview Hospital*, 434 F.Supp. 633, 635 (E.D. Wis.1977), *aff'd*, 582 F.2d 1284 (7th Cir.1978).

**17.** *E.g.*, promotion claims of Dwight Jackson.

**18.** *E.g.*, promotion and training claims of Dwight Jackson; training claims of Felton Carmichael; discipline claim of Robert Johnson; non-conversion claim to permanent status of Juanita McKoy.

**19.** See, *e.g.*, the promotion claim of Penn; one of Sprufero's training claims; the special assignment claims of Johnson.

**20.** See, *e.g.*, the promotion claims of Carmichael; the special assignment claim of Bennett.

**21.** See, *e.g.*, the training claim of Penn. Although that circumstance is not in itself fatal to plaintiffs' claims, it does not enhance the overall credibility of their systematic discrimination theory.

the Department of Justice Complaint Adjudication Officer, and Equal Employment Opportunity Commission all found the claims of these plaintiffs to be without merit.[22]

In sum, when the record before the Court is analyzed, what remains of plaintiffs' charges are: first, generalized, sometimes sweeping allegations of race discrimination without specific factual support[23] which, when examined in juxtaposition with the precise affidavits and other documents filed by the government, are clearly inadequate to establish genuine issues of material fact; and second, a number of discrete personnel actions that are supported by more specific allegations and which raise genuine factual disputes, but which are far too sporadic and diffuse to permit plaintiffs to escape the time limits of the regulations on a systematic discrimination theory.

Since the claims of the plaintiffs are untimely,[24] the government's motion for summary judgment will be granted, and the claims of Dwight Jackson, Felton Carmichael, William Penn, Ossie Bennett, Anthony Sprufero, Edward Morris, Juanita McKoy, and Robert Johnson will be dismissed.

### III

The government has moved for partial summary judgment with respect to those claims of Wallace Roney which arose prior to April 4, 1976. It appears that Roney had filed a number of discrimination complaints against the Marshal's Service as far back as 1973. The two lawsuits filed in June of that year, *Black Deputy United States Marshals Organization v. United States*, C.A. No. 1081–73 (D.D.C.), and *Roney v. Richardson*, C.A. No. 1268–73 (D.D.C.), were dismissed by Judge Corcoran of this Court;[25] a third action filed in December 1973, *Roney v. Saxbe*, 380 F.Supp. 1191 (D.D.C.1974), was dismissed on jurisdictional grounds on August 5, 1974;[26] and a fourth action *Miller v. Saxbe*, C.A. No. 74–1604 (D.D.C.), was filed in November 1974. Judge Gesell dismissed Roney's claim for backpay and promotions on March 7, 1975, on the ground that Judge Corcoran's decision of August 5, 1974 estopped Roney from raising any claims

---

**22.** To be sure, the proceedings before the Court are *de novo.* However, the singular unanimity of the various equal employment opportunity bodies lends credence to the Court's conclusion that invocation of the systematic discrimination *exception to the time limits* is inappropriate. This conclusion is not undermined by a May 1973 order of a Complaint Adjudication Officer or by the January 1977 report of the so-called Taft Committee. See note 12, *supra.* As for the former, it is outdated by the corrective measures which that Officer himself found in March and May 1975; the latter focused more generally on the operations of the District of Columbia Marshal's Service Office and its promotion and assignment practices, and it concluded that the "EEO program has been effective on the merits of the issues and cases it has considered" (Report, p. 37).

**23.** Typical is Felton Carmichael's claim that he applied for five promotions—one in 1974 and four in 1978. However, at his deposition, plaintiff testified that he could not "recall at this time" whether he applied for any promotions other than one for a criminal investigator position in August 1984, and he produced no documents to support his claim although he had been directed to produce at the deposition all documents on which he intended to rely at trial.

The files of the Marshal's Service show no record of any applications other than the one made in August 1984. The Court notes that of the 32 deputies who received such criminal investigator promotions in 1984, twenty-seven are black and four of these 27 are plaintiffs in this lawsuit.

Similarly, while Carmichael testified that several white deputies received training, he could not state that any of these deputies received the specific type of training that he was eligible to receive.

**24.** The claim of Edward Morris with respect to merit promotion 78–18 was timely; however, an uncontradicted affidavit of Kenneth C. Holecko states that he did not make the best qualified list for that promotion, and that he was therefore ineligible to receive it.

**25.** Judge Corcoran granted plaintiff's motion for voluntary dismissal of the first action because of the similarity between it and C.A. 1268–73. The latter action was subsequently dismissed due to Roney's failure to exhaust his administrative remedies.

**26.** Roney failed to bring the action within thirty days after the final agency action was issued on his 1972 and 1973 administrative complaints.

against the federal government. *Miller v. Saxbe,* 396 F.Supp. 1260 (D.D.C.1975). And on February 23, 1976, the parties settled the remaining claims in the *Miller v. Saxbe* action: Miller was promoted; Roney and Miller were paid $16,000 in attorney's fees; a committee was established to study the operations of the U.S. Marshal's Office in the District; the government agreed not to engage in reprisals; and Roney and Miller agreed to withdraw all pending EEO complaints. In his letter to the EEO Officer of the Marshal's Service withdrawing his complaints, Roney stated that he understood that "I may not file another complaint at a later time alleging the same issues."

The government argues in its present motion that, both on grounds of *res judicata* and on the basis of the settlement, the Court lacks jurisdiction to consider Roney's claims arising prior to April 4, 1976.[27] That argument is well taken.

■ It is clear—and Roney does not dispute—that the discrimination claims he seeks to raise in this case were dismissed on jurisdictional grounds by Judges Corcoran and Gesell in the earlier cases. Those dismissals although not "on the merits" for *res judicata* purposes, are conclusive as a "direct estoppel" on the jurisdictional issues actually decided. See 1B *Moore's Federal Practice* ¶ 0.405[5] at 231–33; *Miller v. Saxbe,* 396 F.Supp. 1260, 1261–62 (D.D.C.1975).

■ Additionally, Roney is barred by the February 23, 1976 settlement agreement in which he undertook, for substantial consideration, not to raise the events covered by this action in subsequent administrative or judicial claims. Plaintiff contests the efficacy of that settlement on two bases. First, he argues that the pre-1976 matters should be considered on a continuing violation theory. That argument is unavailable,

however, both because the settlement contains no such limitation and because, for the reasons discussed in Part II *supra,* that theory is unavailable under the circumstances of this case.

Second, Roney relies on representations made by the government in the Court of Appeals, which that court noted in its affirmance, to the effect that the government "will not oppose presentation [in this action] of any facts or circumstances that might have been raised in a reopened proceeding."[28] No facts or circumstances involving claims against the government and relating back prior to April 1976 could have been raised in that reopened proceeding for such claims had been dismissed in March 1975, eleven months before the settlement. The reopened proceeding, and the Court of Appeals reference thereto, related entirely to allegations of discrimination and retaliation occurring after the settlement, which the Court of Appeals assumed would be considered by this Court. Such allegations will, of course, be considered as part of this action.

Accordingly, the government's motion for partial summary judgment with respect to the claims of Wallace Roney will be granted.

**IV**

The government has moved to dismiss the claims of three plaintiffs—Miller, Brown, and Hardy—for failure to comply with legitimate discovery. Another plaintiff, Melvin Birch, who had previously failed to comply with the government's discovery requests, has now filed a motion for the appointment of counsel or, in the alternative, for voluntary dismissal of his claims. These will now be considered.

*1. Raymond J. Miller*

■ As the Court noted in its Memorandum of February 5, 1985, Miller refused on several occasions to provide deposition tes-

---

**27.** April 4, 1976 is thirty days before Roney filed his initial complaint with an EEO counselor after February 12, 1976—the date on which he agreed to withdraw, with prejudice, all of his pending EEO complaints against the Marshal's Service.

**28.** *Miller v. Civiletti,* 652 F.2d 196 (D.C.Cir.1981). This appeal was from the decision by Judge Gesell denying Roney's motion to reinstate and amend the 1974 complaint in *Miller v. Saxbe.*

timony. Indeed, at a status call on November 16, 1984, the Court stated that if Miller (and other plaintiffs) did not appear for the depositions then again being scheduled, it would entertain a renewed motion to dismiss as a sanction for not showing up for the depositions. Tr. at 9. Nevertheless, Miller again failed to appear for his deposition on November 27, 1984. When the government filed its second motion to dismiss, the Court attempted, once again, to save Miller's lawsuit, stating that, in view of some confusion regarding Miller's attempt to secure new counsel, it would not dismiss his action. The Court, however, also made it clear that Miller's deposition was finally to take place immediately. An agreement was reached between counsel to conduct that deposition on February 12. However, once again, Miller did not show up. The only explanation that he has provided[29] is that he "acted out of frustration in deciding not to attend a deposition for the Government on February 12, 1985" because he "thought it was a fruitless and useless act" since he was without financial means to hire another lawyer. Affidavit at 3–4. Given Miller's flagrant record of failure to comply with legitimate discovery, that is not a valid excuse. Accordingly, the government's motion to dismiss Miller's claim will be granted, and his action will be dismissed with prejudice.[30]

### 2. *Melvin Birch*

■ Much of what is related above with respect to Raymond J. Miller applies also to Melvin Birch. Like Miller, Birch has failed and refused to attend various scheduled depositions, despite admonitions from the Court to comply with the discovery rules applicable to all litigants. However, it seems that, unlike Miller, Birch appeared for his deposition in February of 1985—at least the government has not stated that he did not. In view of that circumstance, the Court will grant Birch's motion for voluntary dismissal, and it will do so without prejudice.[31]

### 3. *Louis Brown and Ezell Hardy*

These two plaintiffs have failed to provide deposition testimony as required both by the Rules and by an order of Magistrate Burnett. On November 29, 1984, the government moved to dismiss on this basis,[32] but the Court held the motion in abeyance, noting that it would be a financial hardship for these plaintiffs to travel from California to the District of Columbia for depositions. The government, in renewing its motion, argues that Brown and Hardy are not merely recalcitrant but are also acting in bad faith since Hardy is still employed by the Marshal's Service at an annual salary of over $29,000 and Brown, who is no longer employed by the Marshal's Service, is still pursuing other litigation against the Marshal's Service in the District[33] with private counsel, even though he is proceeding *pro se* in this case. The

---

**29.** This explanation is contained in an affidavit attached to a Motion for Court-appointed Counsel or in the Alternative for Voluntary Dismissal. A separate motion, filed February 25, 1985, requested an extension of time in which to answer the government's motion to dismiss until after the Court had ruled on plaintiff's own motion. Even though the Court did not grant the motion for an extension, plaintiff has failed to file his opposition to the government's motion to dismiss. In any event, the substance of any such opposition is plainly included in his own motion and the affidavit attached thereto, and the Court has fully considered the explanations proffered therein.

**30.** This, of course, moots and disposes of plaintiff's own Motion for a Voluntary Dismissal or for the Appointment of Counsel.

**31.** There is no basis for Birch's request for the appointment of counsel. Birch has failed to cooperate with counsel in the past and, as indicated, he has completely failed to comply with the Federal Rules regarding discovery. Moreover, as an employee of the U.S. Marshal's Service, this plaintiff earns an annual salary of $21,982.00. The motion for the appointment of counsel will accordingly be denied.

**32.** There had been a previous motion to dismiss for failure to comply with discovery, filed on November 15, 1984.

**33.** *Louis Brown v. Department of Justice, U.S. Marshal's Service,* No. 85–0513 (Fed.Cir.).

government also notes that if, as the Court contemplated, the depositions of these plaintiffs were taken in California, it would require travel to that State by government counsel as well as counsel for the other plaintiffs—an unwarranted imposition upon all these individuals.

Trial in this case is set for March 25, 1985, and pretrial for March 14, 1985. Under Local Rule 1–15(c) and a Memorandum and Order of January 30, 1985, plaintiff Brown and Hardy, who are proceeding *pro se*, are required to appear for that pretrial conference. Thus, unless they are to forfeit their right to proceed further with this litigation, they will have to be in the District of Columbia in any event on March 14. The Court realizes that the pretrial is only a week and one-half from the trial date, and that therefore the government may not have fully adequate time within which to take the depositions of these defendants and to make full use thereof for purposes of any additional motions or for trial. Nevertheless, it does seem, on balance, that the claims of plaintiffs Brown and Hardy should not be dismissed because they failed to travel to Washington, D.C., twice during a relatively short period of time.

Accordingly, the Court will once again deny the government's motion to dismiss, with the expectation, however, that Brown and Hardy will make themselves available for depositions on March 14, 1985, or prior thereto, at a time and place in the District of Columbia specified by government counsel. Should these plaintiffs fail to comply with that requirement, the Court will grant a renewed government motion to dismiss.

An order in accordance with these rulings is being issued contemporaneously herewith.

### ORDER

For the reasons stated in a Memorandum filed this date, it is this 8th day of March, 1985

ORDERED that the defendant's motion for summary judgment as to plaintiffs Dwight Jackson, Felton Carmichael, William Penn, Ossie Bennett, Anthony Sprufe-ro, Edward Morris, Juanita McKoy, and Robert Johnson be and it is hereby granted; and it is further

ORDERED that the actions of Dwight Jackson, Felton Carmichael, William Penn, Ossie Bennett, Anthony Sprufero, Edward Morris, Juanita McKoy, and Robert Johnson be and they are hereby dismissed with prejudice; and it is further

ORDERED that the defendant's motion for partial summary judgment concerning the claims of plaintiff Wallace Roney arising prior to April 4, 1976, be and it is hereby granted; and it is further

ORDERED that the claims of plaintiff Wallace Roney arising prior to April 4, 1976, be and they are hereby dismissed with prejudice; and it is further

ORDERED that the defendant's motion to dismiss plaintiff Raymond Miller for his refusal to provide deposition testimony be and it is hereby granted; and it is further

ORDERED that the action of plaintiff Raymond Miller be and it is hereby dismissed with prejudice; and it is further

ORDERED that the motion of plaintiff Melvin Birch for voluntary dismissal be and it is hereby granted; and it is further

ORDERED that the action of Melvin Birch be and it is hereby dismissed without prejudice; and it is further

ORDERED that the defendant's motion to dismiss plaintiffs Louis Brown and Ezell Hardy be and it is hereby denied without prejudice to a renewed motion to dismiss if the above-named plaintiffs do not make themselves available for depositions on March 14, 1985, or prior thereto, at a time and place in the District of Columbia specified by government counsel.