NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**KENNETH RAY KENT,**
*Petitioner,*

v.

**DEPARTMENT OF THE AIR FORCE,**
*Respondent.*

---

2013-3034

---

Petition for review of the Merit Systems Protection Board in No. AT0752100652-B-1.

---

Decided: April 5, 2013

---

KENNETH RAY KENT, of Denver, Colorado, pro se.

GREGG PARIS YATES, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent. With him on the brief were STUART F. DELERY, Principal Deputy Assistant Attorney General, JEANNE E. DAVIDSON, Director, and STEVEN J. GILLINGHAM, Assistant Director.

---

Before RADER, *Chief Judge,* O'MALLEY, and WALLACH,
*Circuit Judges.*

PER CURIAM.

Kenneth Ray Kent petitions for judicial review of a final order issued by the United States Merit Systems Protection Board on September 27, 2012. The order denied Kent's petition to review an earlier decision that dismissed the appeal of his removal from federal employment. For the reasons set out below, we *affirm*.

BACKGROUND

On April 16, 2010, the Department of the Air Force ("Air Force") removed Kenneth Ray Kent ("Kent") from employment based on a charge of improper conduct. Kent had been working as a Voucher Examiner, GS-0540-05, in the Individual Mobilization Augmentee Travel Pay Office at Dobbins Air Reserve Base in Fair Oaks, Georgia.

Kent appealed the removal decision to the United States Merit Systems Protection Board ("MSPB") on May 4, 2010. In an initial decision dated September 1, 2010, an MSPB administrative judge affirmed the Air Force's decision to remove Kent. Kent subsequently filed a petition for review, and on September 19, 2011, the MSPB vacated the initial decision and remanded the appeal to allow the parties to submit evidence regarding a potential violation of Kent's due process rights.[1]

Kent attended a hearing before an MSPB administrative judge on January 10, 2012, where the administrative judge encouraged him to engage in settlement discussions with the Air Force. Kent and the Air Force engaged in

---

[1] Kent contended he was not given access to evidence considered by the Air Force in deciding to remove him, thereby violating his rights under the Due Process Clause of the Fifth Amendment.

settlement negotiations and ultimately entered into a settlement agreement ("the Settlement Agreement" or "Agreement") on the day of the hearing. Under the terms of the Settlement Agreement, Kent agreed to "withdraw and never reinstitute" his appeal and to "withdraw any and all other claims against the Department of the Air Force . . . arising from his civil employment at Dobbins Air Reserve Base." In return, the Air Force agreed to rescind Kent's removal, allow Kent to resign with a clear record, pay Kent $25,000.00, and provide a neutral reference. The Settlement Agreement also stated:

> This Agreement was freely and voluntarily entered into without threats, coercion or duress and the parties fully understand and accept the terms of this Agreement. All parties have been afforded the opportunity to carefully review this Agreement, read and raise questions about its meaning, and consult with counsel or other representative prior to signing.

App'x 23. The Agreement further provided: "PARTIES ACKNOWLEDGE THAT THEY HAVE READ THIS AGREEMENT, UNDERSTAND IT, AND ARE VOLUNTARILY ENTERING INTO IT. PLEASE READ THIS AGREEMENT CAREFULLY, IT CONTAINS A RELEASE OF KNOWN AND UNKNOWN CLAIMS." App'x 24. On January 11, 2012, an MSPB administrative judge issued an initial decision dismissing Kent's appeal based on the settlement between Kent and the Air Force.

Kent subsequently appealed the January 11, 2012 initial decision, contending, *inter alia*, that he was coerced into signing the Settlement Agreement and that the Air Force procured his acceptance of the Agreement by fraud. On September 27, 2012, the MSPB issued a final order denying Kent's petition for review and affirming the January 11, 2012 initial decision. Kent now appeals the final order of the MSPB.

LEGAL STANDARD

We have jurisdiction over appeals from final orders of the MSPB under 28 U.S.C. § 1295(a)(9). "The scope of our review in an appeal from a decision of the [MSPB] is limited." *Briggs v. Merit Sys. Prot. Bd.*, 331 F.3d 1307, 1311 (Fed. Cir. 2003). We may only set aside decisions by the MSPB that are "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c); *see also Briggs*, 331 F.3d at 1311. The petitioner has the burden of establishing error in the MSPB's decision. *Harris v. Dep't of Veterans Affairs*, 142 F.3d 1463, 1467 (Fed. Cir. 1998).

When parties enter into a settlement agreement that fully resolves their dispute, there is no case or controversy remaining over which the MSPB or this court have jurisdiction. *Asberry v. U.S. Postal Serv.*, 692 F.2d 1378, 1380 (Fed. Cir. 1982). If a settlement agreement is "'tainted with invalidity, either by fraud . . . or by a mutual mistake under which both parties acted,'" however, this court may set aside the MSPB's decision not to vacate the agreement. *Id.* (quoting *Callen v. Pennsylvania R.R. Co.*, 332 U.S. 625, 630 (1948)). To prove that a settlement agreement is invalid because it was entered under duress, a petitioner must show that "(1) [he] involuntarily accepted [the settlement agreement's] terms, (2) circumstances permitted no other alternative, and (3) such circumstances were the result of . . . coercive acts." *Dureiko v. United States*, 209 F.3d 1345, 1358 (Fed. Cir. 2000). A party attacking the validity of a settlement agreement "bear[s] a properly heavy burden." *Asberry*, 692 F.2d at 1380.

ANALYSIS

On appeal, Kent contends that he was coerced into signing the Settlement Agreement. Kent asserts that he attended a hearing before an MSPB administrative judge

on January 10, 2012, where the administrative judge encouraged him to engage in settlement discussions with the Air Force. Kent was not represented by counsel at the hearing or during the settlement discussions that took place that day. According to Kent, the Air Force, through the administrative judge, indicated that it would withdraw its offer to settle if Kent did not accept it on January 10, 2012. Kent alleges that, because of the deadline imposed upon him, he was denied the opportunity to consult with an attorney prior to accepting the Settlement Agreement. Consequently, Kent asserts that, particularly in light of the financial difficulty he had experienced following his removal from employment, he had no choice but to sign the Agreement.

None of Kent's allegations indicates that Kent's decision to settle with the Air Force was involuntary, that the administrative judge coerced Kent into accepting the Settlement Agreement, or that he was left with no other alternative. The fact that Kent was not provided with an attorney or afforded additional time to obtain counsel does not indicate that Kent involuntarily settled his dispute with the Air Force. Kent has not presented any evidence that he was prevented from bringing counsel to the hearing on January 10, 2012, or that, in the absence of counsel, he was unable to understand the settlement terms offered by the Air Force. Indeed, as noted, the Agreement itself recites Kent's full understanding of it.

While Kent asserts that his financial distress prompted him to accept the Settlement Agreement, that fact does not establish that his acceptance of the Settlement Agreement's terms was involuntary. As this court has observed, "[e]very loss of employment entails financial hardship. If that alone were sufficient to establish economic duress, no settlement involving it would ever be free from attack. . . . [E]ven threatened financial disaster is not sufficient." *Asberry*, 692 F.2d at 1381.

Kent's coercion argument fares no better. There is nothing improper about an administrative judge conveying the terms of a settlement offer to a party—including the fact that the offer may be a short-lived one. And, there is nothing improper about the Air Force's decision to place a deadline on their offer. *See Parrott v. Merit Sys. Prot. Bd.*, 519 F.3d 1328, 1335 (Fed. Cir. 2008) ("[T]he fact that [the petitioner] had a relatively short period of time to decide whether to sign the settlement agreement and resign . . . did not render his resignation involuntary."). Other than the Air Force's demand for a quick response from him, Kent has not pointed to any other facts that would support his claim of coercion. Kent's "bare allegation of coercion is not sufficient to set aside the parties' settlement agreement." *Tiburzi v. Dep't of Justice*, 269 F.3d 1346, 1355 (Fed. Cir. 2001).

Finally, Kent has failed to establish that the circumstances were such that he was left with no alternative but to agree to the Settlement Agreement. As the MSPB correctly observed, Kent "remained free to refuse to sign the [S]ettlement [A]greement and insist on a ruling by the administrative judge." App'x 4. Thus, because Kent has not satisfied any of the criteria for establishing the invalidity of the Settlement Agreement, we affirm the MSPB's decision refusing to set it aside.

In addition to challenging the validity of the Settlement Agreement, Kent asserts that his removal from employment was improper in light of evidence that he presented to the MSPB prior to the remand order of September 19, 2011. Because we agree with the MSPB's determination that the Settlement Agreement resolves the employment dispute between Kent and the Air Force, however, we lack jurisdiction to address Kent's challenge related to the propriety of his dismissal. *See Asberry*, 692 F.2d at 1380.

CONCLUSION

Because Kent has failed to demonstrate that his agreement to settle with the Air Force was the product of coercion, we affirm the final order of the MSPB.

**AFFIRMED**